429 S.E.2d 239

**Anita J. McVAY, Plaintiff Below, Appellant,**

v.

**William A. McVAY, Defendant Below, Appellee.**

No. 19903.

Supreme Court of Appeals of · West Virginia.

Submitted Jan. 20, 1993.

Filed March 25, 1993.

J. Michael Anderson, Rainelle, for appellant.

Travers R. Harrington, Fayetteville, for appellee.

PER CURIAM:

This action is before this Court upon an appeal from the January 9, 1990 order of the Circuit Court of Nicholas County, West Virginia. The circuit court granted the parties a divorce based upon the grounds of irreconcilable differences. The appellant was awarded $867.06 per month in alimony, but this amount was subsequently reduced to $1 per year. On appeal, the appellant asks that the initial alimony award of $867.06 be reinstated. This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, the judgment of the circuit court is reversed and remanded.

I

The parties were married on August 9, 1975, in Indianapolis, Marion County, Illinois, and they last cohabited as husband and wife in Summersville, Nicholas County, West Virginia. One child was born of the marriage, Christina Kathleen McVay, on November 11, 1980.

The appellant sought a divorce from the appellee based upon the grounds of irreconcilable differences, and the appellee admitted that irreconcilable differences exist between the parties. Subsequently, hearings were held and on March 8, 1988, the family law master issued a recommended decision. In relevant part, the family law master recommended, and the trial judge agreed, that the appellant be awarded $632.94 per month in child support and $867.06 per month in alimony for a period of six years for a total of $1,500.00 per month.[1] On April 1, 1994, the alimony award is to be reduced to $275.00 per month for a period of 24 months and shall be reduced thereafter by an additional $275.00.[2]

On April 20, 1989, the appellee filed a petition to modify the child support award and eliminate the alimony award on the basis that the appellant was employed and living with another man. A hearing on the petition to modify was held on July 8, 1989, before the family law master. The parties agreed that the child support award should remain unchanged. The evidence revealed that the appellant is employed as a secretary at a veterinary hospital earning $400.00 per week. Further, the evidence revealed that the appellant was living with a man who earns approximately $1,000.00 per month, but contributes very little to the household expenses.

1. More specifically, in the family law master's recommended order of March 8, 1988, and the trial judge agreed, that:

    [T]he plaintiff is entitled to alimony and the defendant shall pay unto the plaintiff the sum of six hundred thirty dollars ($630.00) per month by way of alimony and in addition thereto the defendant shall make the plaintiff's car payment in the amount of two hundred forty-one dollars ($241.00) per month until said vehicle is paid-off, beginning June 15, 1988; it is the intention of the court for a combined alimony and child support income of no less than one thousand five hundred dollars ($1,500.00) per month for a period of six years, subsequent to the entry of this order in connection herewith; therefore, in the event the defendant shall pay off the 1985 Chrysler automobile, which said payment shall be considered as part of the alimony award, prior to the expiration of six (6) years, then the alimony awarded herein shall increase accordingly to eight hundred and sixty-

seven dollars and 06/100 ($869.06) per month[.]

2. The language of the recommended order does not track the language of the order entered by the trial court regarding the reduction in the alimony award beginning April 1, 1994. The family law master's recommended order states, "on April 1, 1994, the alimony to be paid by the defendant shall be reduced *by* $275.00 per month for a period of 24 months, and shall be reduced thereafter by an additional $275.00." (emphasis added). The trial court's final order states, in relevant part, that "beginning April 1, 1994, the alimony paid by the defendant unto the plaintiff shall be reduced *to* two hundred seventy-five dollars per month for a period of twenty-four months and shall be reduced thereafter by an additional two hundred seventy-five dollars ($275.00)." (emphasis added). This explanation is for clarification purposes only and does not affect the trial court's modification of the alimony award or this Court's decision in this case.

The family law master stated that initially the alimony was predicated upon the appellant's prior testimony that she was not suited for any employment except for "fast food" due to her training, education and experience. The family law master went on to conclude that it is apparent that the appellant has progressed rapidly by way of training, experience, and education, and thus, the original need for alimony has disappeared. The family law master recommended that the appellant's alimony award be reduced to $1 per year, effective July 28, 1989. The recommendation was approved by the circuit court on January 9, 1990.

It is from the order of January 9, 1990, that the appellant appeals to this Court.[3]

## II

The primary issue in this case is the appellant's contention that she is entitled to the initial alimony award of $876.06. In support of the appellant's contention, she cites three points of error committed by the circuit court in reducing the alimony award.

■ It is well recognized that "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). In this case, the circuit court has clearly abused its discretion by reducing the appellant's alimony award from $867.06 per month to $1 per year.

The appellant's first argument concerns the appellant's right to alimony from her former husband in light of her cohabitation with another man. More specifically, the appellant argues that her alimony award should not be reduced because she was living with another man and not her husband. The appellant asserts that it is obvious that cohabitation was a primary influence on the trial court's decision because of the drastic reduction in the amount of the award, $867.06 a month to $1 per year. It should be noted that the record is unclear as to whether the couple's cohabitation was the primary reason behind the trial court's decision to reduce the appellant's alimony award. Nevertheless, we agree with the appellant, as it is evident from the transcripts of the modification hearings, that the family law master's primary focus was on the appellant's cohabitation with another man rather than the changed circumstances that evolved as a result of the appellant finding employment.

The court's authority to modify an alimony award is set forth in *W.Va.Code*, 48–2–15(e) [1992]:

> At any time after the entry of an order pursuant to the provisions of this section, the court may, ..., revise or alter such order concerning the maintenance of the parties, or either of them, and make a new order concerning the same, ..., as the altered circumstances or needs of the parties may render necessary to meet the ends of justice.

In *Wight v. Wight*, 168 W.Va. 334, 284 S.E.2d 625 (1981), the appellant argued that the appellee's cohabitation with another man should relieve the appellant from the obligation of paying alimony. We concluded in *Wight* that *W.Va.Code*, 48–2–15 [1992] "makes no reference to the conduct of the parties after the granting of a divorce. Rather it makes their financial circumstances and needs and the requirements of justice the factors to be considered in determining whether an alimony award should be modified." *Id.* at 337, 284 S.E.2d at 626–27. This point was reiterated in *Judith R. v. Hey*, 185 W.Va. 117, 121, 405 S.E.2d 447, 451 (1990), where we held that "an ex-wife's cohabitation with an adult male not her husband does not constitute grounds for termination or reduction of alimony award absent showing of change in financial condition of ex-wife by

---

**3.** The delay in the processing of the appeal was caused by the failure of the appellant to pay the costs of reproducing the record. The appellant's motion for leave to move to reverse was granted on October 21, 1991, and the case proceeded on the original record.

reason of contribution by the person with whom she cohabits."

In applying the analysis set forth in *Judith R. v. Hey,* to the facts in this case, the record fails to reflect a change in the appellant's financial condition due to contributions made by the man with whom the appellant cohabits. Any sort of change in the appellant's financial status can be attributed to the appellant's individual efforts to improve her life, as well as her daughter's life. Furthermore, justice would not require such a drastic reduction in alimony in light of the fact that the appellant has incurred additional expenses to obtain the education and training she needs to become self-supporting. Rehabilitative alimony was designed for this very purpose. *See* syl. pt. 1, *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984).

Next, the appellant argues that, when reducing her alimony award, the circuit court should have considered the additional living expenses she has incurred in comparison to her weekly income.

■ As the case law mandates, "[o]ur general rule is that the circuit court which grants a divorce is vested by statute with continuing subject-matter jurisdiction to modify or alter its original order as to alimony and child support, as the changed circumstances of the parties may ... require." *Douglas v. Douglas,* 171 W.Va. 162, 163, 298 S.E.2d 135, 136–37 (1982). To determine if a change in circumstances has occurred, in order to justify a reduction in alimony, "by its terms *W. Va. Code,* 48–2–16 [1984] requires a circuit court to consider the financial needs of the parties, their incomes and income earning abilities ... in determining the amount of alimony to be awarded in a modification proceeding." Syl. pt. 2, *Yanero v. Yanero,* 171 W.Va. 88, 297 S.E.2d 863 (1982).

Since the entry of the divorce order, the appellant is no longer unemployed and, at the time of the modification hearing, she was earning $400 per week as a secretary at a veterinary hospital. The appellee's employment status has remained unchanged. Further, the appellant has incurred additional expenses, such as rent,

utilities, tuition, and child care, as well as loan and car payments. It would appear that the appellant's change in lifestyle has created a "change in circumstances" per *Douglas, supra.*

This change may justify a reduction in the alimony award but it does not call for a virtual elimination of alimony. We, therefore, remand to the circuit court for reconsideration of the award in accordance with the principles enunciated herein.

■ We have recognized the pertinent areas of inquiry in determining if rehabilitative alimony is appropriate as outlined in syllabus point 3 of *Molnar, supra:*

There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

The appellant contends that she is entitled to reinstatement of the initial alimony award based upon her ability to satisfy the aforementioned requirements. In reference to the first factor, the appellant has dedicated eleven years of her life to the parties' marriage, she is now in her mid-forties and in relatively good health; however, she lacks a formal education. During the marriage, the appellant was a homemaker, but since the dissolution of the parties' marriage, the appellant has enrolled and participated in undergraduate college courses. In regard to the second factor of the *Molnar* checklist, the appellee obviously has the ability to pay alimony. The appellee is the chief financial officer of Bright of America, and he earns $65,000.00 annually, plus discretional annual bonuses of $5,000.00. Finally, the third factor, the continuing jurisdiction of the court to modify a rehabilitative alimony award, is ordinarily left to the sound discretion of the trial court. Thus, irrespective of the fact

that the appellant fulfilled the *Molnar* requirements, the circuit court, nonetheless, reduced the alimony award to $1 per year.

This Court believes the facts of this case show that the trial judge, in making the modification ruling, failed to adequately consider the factors enumerated in *Molnar.* This Court also believes that a consideration of those factors supports a finding that the trial judge abused its discretion in reducing alimony to $1 per year.

The appellant's final argument is that the divorce order specified when the alimony award was subject to modification, and thus, the trial court erred in reducing the alimony award prior to the time designated in the final divorce order.

■ The trial judge has the authority to fix and/or modify an alimony award. *W. Va. Code,* 48–2–15(a) & (e) [1992]. In applying the aforementioned provisions, this Court has held that "the right to fix the amount of alimony rests in the sound discretion of the chancellor, and this Court will not disturb his judgment unless he has grossly abused such discretion." Syl., *Shannon v. Shannon,* 165 W.Va. 662, 270 S.E.2d 785 (1980), *citing* syllabus point 2, *Henrie v. Henrie,* 71 W.Va. 131, 76 S.E. 837 (1912).

The trial judge obviously has the authority to order and modify an alimony award, and with this authority comes responsibility. The appellant's rehabilitative alimony award should not have been drastically reduced in the midst of her rehabilitation.

Based upon the foregoing, we find that the circuit court abused its discretion in reducing the appellant's rehabilitative alimony award from $867.06 per month to $1 per year. It is unclear as to whether cohabitation was the primary reason behind the trial court's decision to reduce the appellant's alimony award. Yet, the hearing transcript demonstrates the fact that cohabitation was definitely a consideration of the family law master in arriving at a final decision. Nevertheless, the record fails to reflect a change in the appellant's financial condition due to contributions made by the man with whom the appellant cohabits. However, the trial judge was correct, when

modifying the alimony award, to consider the change in the appellant's employment status and change in the appellant's lifestyle as a result of her employment. In determining whether an alimony award should be modified, the trial court's primary focus should be on the changed circumstances of the parties. We, therefore, remand the case to the Circuit Court of Nicholas County for reconsideration of the award in accordance with the principles enunciated herein.

Reversed and remanded.